[File No. 7.72]

MILO HOCHSTETLER, Respondent, v. LEVI GRABER, Abraham Graber, and Owen Graber, Defendants and Appellants.

(48 NW2d 15)

Opinion filed May 15, 1951

*Benson & Swanson,* for appellants.
*Stormon & Stormon,* for respondent.

MORRIS, Ch. J.  This is an action for the conversion of grain. A judgment was entered in favor of the plaintiff and against the three defendants, pursuant to a verdict of a jury, for the sum of $5347.57 damages and costs.  The complaint alleges that

"That by virtue of an oral agreement made on or about the month of October, 1946, at Rolette County, North Dakota, by and between the plaintiff and the defendants for the farming of hereinafter described lands during the 1947 farming season and to be performed within one year, and the due performance of his part of said agreement by the plaintiff, the plaintiff became the owner of an undivided one-sixth right, title, and interest in and to all grain grown, harvested, and threshed on said lands, to-wit: The NE¼ and SW¼ of Section 17, the SE¼ of Section 18, the S½SW¼ and N½NW¼ and N½NE¼ of Section 20, the SW¼ of Section 21, and the N½NW¼ of Section 29, in Township 160 North, of Range 70 West of the 5th P.M.; and the S½NW¼ and N½SW¼ of Section 25, and the SE¼NW¼ and SW¼NE¼ and NE¼SW¼ and NW¼SE¼ of Section 35, in Township 161 North, of Range 70 West of the 5th P.M.; and the West Half of Section 1, and 240 acres in Section 6, in Township 159 North, of Range 70 West of the 5th P.M., and all other lands of the defendants situated in Rolette County, North Dakota."

The answer admits this paragraph of the complaint. The complaint further alleges that demand has been made upon the defendants for the delivery of the one-sixth part of the grain covered by the oral agreement pleaded above and that delivery was refused. It is then alleged that on or about October 2, 1947, the defendants, being in possession of the grain, unlawfully converted the same to their own use to the damage to the plaintiff in the sum of $10,000.00. The defendants plead two defenses. They deny that the plaintiff ever demanded delivery of the grain in question or that they converted it. The second defense is that of accord and satisfaction. In support of this the defendants allege that on or about October 2, 1947, the amount to which the plaintiff was entitled as his share of the grain was in dispute and that there was a further dispute as to when the 1947 crop would be sold or divided and that in settlement of this dispute it was mutually agreed between the plaintiff and the defendant, Levi Graber, that the plaintiff would sell and transfer to that defendant all of the plaintiff's right, title, and interest in the crop for a cash payment of $2500.00, which was paid to and accepted by the plaintiff in full settle-

ment and in accord and satisfaction of all his claims to the grain in dispute.

After verdict and judgment for the plaintiff, defendants moved for a new trial, the grounds for which fall into three major groups. They contend that the verdict is not supported by the evidence and was given under passion and prejudice; that certain specified errors occurred at the trial require that a new trial be granted; and that the defendants have discovered new evidence that is material to the defense and could not with reasonable diligence have been discovered and produced at the trial. The trial court denied defendants' motion, whereupon they appealed from both the judgment and from the order denying the motion for new trial.

The pleadings establish that by virtue of an oral agreement between the plaintiff on the one hand and the defendants on the other, the plaintiff became the owner of an undivided one-sixth interest in all grain produced in 1947 upon the heretofore described lands.

We will first consider the defendants' challenge to the sufficiency of the evidence to sustain the verdict. This court has many times, and in different ways, stated the rule that whether a new trial shall be granted rests largely within the sound judicial discretion of the trial court, and unless an abuse of that discretion is shown the action of the trial court will not be disturbed on appeal. Among our more recent cases supporting this rule are State v. Hummel, 73 ND 308, 14 NW2d 368; Haslam v. Babcock, 71 ND 363, 1 NW2d 335; and Froh v. Hein, 76 ND 701, 39 NW2d 11. The trial court considered the sufficiency of the evidence and, in denying a new trial, confirmed the verdict of the jury. When the verdict is attacked in this court and the evidence, though conflicting, is legally sufficient to sustain the verdict under the instructions of the trial court, the verdict and judgment will not be disturbed. Haslam v. Babcock, supra; Griffin v. Implement Dealers Mutual Fire Ins. Co., 64 ND 146, 250 NW 780; Rickel v. Sherman, 34 ND 298, 158 NW 266; Branthover v. Monarch Elevator Co., 42 ND 330, 173 NW 455; Hampton v. Ross, 56 ND 423, 217 NW 845; Kraft v. Martell,

58 ND 58, 225 NW 79. The defendants argue that the evidence is not sufficient to support a finding by the jury that the defendants converted grain belonging to the plaintiff. It is asserted that the evidence fails to show a demand by the plaintiff upon the defendants for the grain in question. The evidence on this point is conflicting. The plaintiff testified that he demanded a division of the grain on two occasions, the first in the latter part of September, 1947, and the second in November of the same year. The defendants deny this. The trial court did not submit to the jury in his instructions the issue of whether or not a demand was made. No request was made for an instruction on this point. The defendants openly claimed and exercised dominion over all of the grain, including the plaintiff's share, from and after October 1, 1947. On that date they contend that the plaintiff relinquished all claim to the grain by virtue of an accord and satisfaction, which we will discuss in detail later in this opinion. By far the greater portion of the grain in value was hauled to elevators, sold by the Grabers, and the proceeds received and retained by them. While plaintiff's counsel was interrogating a witness regarding these transactions, defendants' counsel stated:

"If the Court please, if it would facilitate matters the defendant would be willing to stipulate that any grain from the 1947 crop that the proceeds were paid to the Grabers and none to the plaintiff Hochstetler."

Plaintiff's counsel then said:

"And that it is in the control of the defendants?"

To which the defendants' counsel replied: "Yes."

As a general rule the wrongful sale of personal property in which another has an interest renders the seller liable for the conversion of that interest. Nesvold v. Gerding, 49 ND 207, 190 NW 815; 53 Am Jur, Trover and Conversion, Section 35; 15 Am Jur, Crops, Section 66; 14 Am Jur, Cotenancy, Section 71. The grain not sold to elevators was taken into possession by the Grabers to the exclusion of the plaintiff, and they at all times after October 1, 1947, asserted that the plaintiff had no right or interest therein.

"That a tenant in common may maintain an action against a co-tenant to recover the value of a joint interest in personal property, to the actual possession of which he is entitled, at a time when his rights of ownership and possession are denied and ignored in a manner which deprives him of the possibility of any enjoyment thereof or benefit therefrom, is supported by both reason and authority." Wood v. Steinau, 9 SD 110, 68 NW 160. See also Tuttle v. Campbell, 74 Mich 652, 42 NW 384.

Demand and refusal may be evidence of conversion, but are not necessary to constitute a conversion, and where a demand would be unavailing, none need be made.

"A demand followed by a refusal to deliver property is only evidence of a conversion and need not be made before the commencement of the action in case a demand would be obviously unavailing, as when, by pleading and proof, the property is shown to be detained under a claim of absolute right." More v. Burger and Movius, 15 ND 345, 107 NW 200.

The record contains ample evidence of conversion, regardless of the conflicting testimony as to a demand for a division of the grain. Rolette State Bank v. Minnekota Elevator Co., 50 ND 141, 195 NW 6.

The plaintiff was the son-in-law of Levi Graber. Abraham Graber and Owen Graber are sons of Levi. The defendants conduct extensive farming operations in Rolette County. In 1946 the plaintiff lived in Indiana. In October of that year he visited for about two weeks at the Graber farm. At that time the oral agreement set forth in the pleadings was made. Pursuant to this agreement, the plaintiff returned to the Graber farm in April, 1947, and with his fifteen year old son worked on the farm with the three defendants throughout the farming season. The defendants admit the contract and its performance by the plaintiff up until about the first of October, 1947. On that date Abraham Graber testified regarding a conversation with the plaintiff while the two were working in a field. The testimony regarding this conversation is meager. He stated that the plaintiff said:

"The way things look I might just as well take wages."
To which the witness replied:

"How much does it take for wages?"

Then the plaintiff said he would take $2500.00. The witness then said that he would see what his father would say. Later a check was written out by the wife of Levi Graber, dated October 2, 1947, payable to the plaintiff in the sum of $2500.00. It was signed by Levi Graber. In the lower lefthand corner was written "for wages". Abraham Graber testified the check was handed to him by his father and he delivered it to the plaintiff as he and the plaintiff were going home from combining. This witness also testified that the plaintiff agreed to continue working for $5.00 a day for himself and $5.00 a day for his son and that later he paid the plaintiff for additional work at the rate of a dollar an hour and $5.00 a day for his son. Upon cross-examination, Abraham's testimony became confused as to whether these payments were for work done in the fall of 1946 or in the fall of 1947.

The plaintiff's version of the check incident is that on October 2, he was out in the field combining when Levi Graber came out to the field and called the plaintiff over to his car and handed the plaintiff the check for $2500.00. He had previously told Levi Graber that he wanted to sell some grain in order to pay off a debt that the plaintiff owed on a combine. Levi said that there would be no grain sold until after the first of the year, but that he would advance the plaintiff some money on the grain. Plaintiff testified that when Levi handed him the check he stated:

"You marked it for wages."

and Levi said:

"Yes, I did so I can deduct it from my income tax."

The plaintiff states positively that prior to that time there had been no discussion about wages and that at no time did he agree to work for a dollar an hour. There is a direct conflict in the testimony regarding giving of the check, its purpose, and the circumstances surrounding the transaction. The plaintiff claims that he accepted it as an advance upon his share of the grain, a portion of which had already been threshed and was in elevators. Defendants contend that the transaction amounted to an accord and satisfaction and terminated the con-

tract under which the plaintiff was to receive one-sixth of the crop.

Our statutes define both accord and satisfaction.

"An accord is an agreement to accept in extinction of an obligation something different from or less than that to which the person agreeing to accept is entitled." Section 9–1304 RCND 1943.

"Acceptance by the creditor of the consideration of an accord extinguishes the obligation and is called satisfaction." Section 9–1305 RCND 1943.

The following Section, 9–1306, states:

"Though the parties to an accord are bound to execute it, yet it does not extinguish the obligation until it is executed fully."

Accord and satisfaction is an affirmative defense and must be specially pleaded, as a general rule. Paulson v. Ward County, 23 ND 601, 137 NW 486, 42 LRA(NS) 111, Ann Cas 1914D 822; 1 Am Jur, Accord and Satisfaction, Section 75. There must be a mutual understanding in order to effect an accord and satisfaction. An essential element is an assent or meeting of the minds of the parties. Billings v. Doering Grain Co., 47 ND 196, 181 NW 54; 1 CJS, Accord and Satisfaction, Section 6; 1 Am Jur, Accord and Satisfaction, Section 4.

"The payment and receipt of money upon an unliquidated claim will not operate as a settlement although the debtor so intended it and would not have paid it if he had not understood that such would be its effect, but in reference to which he made no such condition, if the creditor did not so understand it and would not have received it upon such an understanding. Brigham v. Dana, 29 Vt 1. To constitute an accord and satisfaction of such a claim it is necessary that the offer be accompanied by such acts and declarations as amount to a condition that if the money is accepted it is accepted in satisfaction, and such that the party to whom it is offered is bound to understand therefrom that he takes it subject to such condition." Jones v. Campbell, 92 Vt 19, 102 Atl 102, LRA1918A 1056.

Meeting of the minds is essential to an accord and satisfaction. Pring v. Udall, 95 Colo 23, 31 P2d 1113; Arnett v.

Smith, 11 ND 55, 88 NW 1037. Where the evidence with respect to the facts is conflicting, the question whether or not there has been an accord and satisfaction is for the jury. Chubb v. Baldwin Piano Co., 54 ND 189, 208 NW 975; 1 Am Jur, Accord and Satisfaction, Section 78; 1 CJS, Accord and Satisfaction, Section 49b; Kellogg v. Iowa State Traveling Men's Association, 239 Iowa 196, 29 NW2d 559. The burden of proof to establish accord and satisfaction is upon the party who seeks to rely upon it. Baird v. Chamberlain, 60 ND 784, 236 NW 724; 1 Am Jur, Accord and Satisfaction, Section 77.

Under the defendants' evidence the plaintiff's acceptance of a check for $2500.00 as wages in lieu of his one-sixth interest in the crop and his cashing of the check and retention of the proceeds constituted an accord and satisfaction which settled a controversy with respect to the plaintiff's share of the crop and its sale, and constituted an accord and satisfaction which terminated all rights of the plaintiff in the crop. On the other hand, under the plaintiff's evidence, there was no dispute regarding the crop. Plaintiff accepted the $2500.00 check as an advance against the plaintiff's share of the crop. The jury accepted the plaintiff's version of the transaction. There is evidence in the record sufficient to sustain the plaintiff's contention. The evidence, although conflicting, is clearly sufficient to sustain the verdict with respect to the existence of conversion and the nonexistence of accord and satisfaction.

The defendants urge that the verdict of the jury was given under the influence of passion and prejudice. This contention is wholly without support in the record. The defendants argue that they own between 2000 and 3000 acres of land and that the plaintiff was a comparatively poor man with a small farm in Indiana. There is nothing about the case that indicates prejudice, or that the defendants did not get a fair trial in every respect. The mere fact that the defendants, who were more affluent than the plaintiff, lost the case does not establish that the verdict was rendered under the influence of passion and prejudice. Moreover, the trial court in his memorandum says:

"The Court is of the opinion that the verdict was justified by

the facts and reflects good, sensible, reasonable judgment and determination by the jury and that the verdict was not the result of passion or prejudice."

We now turn to specifications of error at law occurring during the trial. Levi Graber had testified that his wife had written out the $2500.00 check which he signed. His counsel then asked:

"Did you ask her to put these words on there, 'for wages?' " The witness answered:

"No, she says, 'Will I put this on for wages in full?' I said, 'No, not particular, not necessarily,' but she goes and writes that on in particular. I said, 'He knows he is taking—he is willing to take it.' She said she put it on for wages."

On motion to strike this answer the court ordered stricken everything but the answer "No." Defendants' counsel strenuously urges that the ruling is erroneous and deprives the witness of the opportunity to explain the situation surrounding the giving of the check. Levi Graber's wife was not a party to the action and the plaintiff was not present at the time of the conversation. What Mrs. Graber said to Mr. Graber at the time she wrote out the check is clearly incompetent.

The next specification of error is based upon the refusal of the court to permit Levi Graber to answer this question over objection:

"When you gave that check was it your understanding that it was settlement in full between you and Mr. Hochstetler?"

The defendants argue that the witness should have been permitted to state what his understanding was in support of their contention that the check was given as an accord and satisfaction.

The point at issue and at which this testimony was directed was the establishment of an accord and satisfaction. One of the essentials is an assent or meeting of the minds of the parties. The check, in order to be the basis of an accord and satisfaction, must have been offered with the intention on the part of the defendants that it was in full satisfaction of the disputed claim and must have been accepted as such by the creditor, Hochstetler. 1 CJS, Accord and Satisfaction, Section

6. Where the actual intention with which an act is done is material, a party may usually give direct testimony as to his intention. State ex rel. Olson v. Royal Indemnity Co., 44 ND 550, 175 NW 625. That rule is not applicable to the question in the form in which it was asked. The witness was not asked as to his intention, but as to his understanding, which is a much broader term and implies a concept which partakes of a conclusion as a result of the transaction. Webster's New International Dictionary, Second Edition, gives these synonyms for intention: intent, purpose, design, aim, object, and end, while it defines understanding as: knowledge, discernment, comprehension, interpretation or explanation and gives the words concept and perception as synonyms. The trial court did not err in sustaining the plaintiff's objection. Valley Planting Co. v. Wise, 93 Ark 1, 123 SW 768, 26 LRA (NS) 403; Sapulpa Refining Co. v. Cedar Rapids Oil Co., 190 Iowa 892, 179 NW 168; Kelso v. Fitzgerald, 67 Iowa 266, 25 NW 157.

The court properly refused to permit the defendants, over objection, to testify to conversations between themselves not in the presence of the plaintiff. Nor was it error to refuse to permit Levi Graber to testify that "twenty-five hundred dollars plus another hundred dollars or so was a reasonable payment for one-sixth interest in that crop of 1947 after all expenses were figured out."

The defendant, Levi Graber, was permitted to testify that under the agreement made in the fall of 1946 the Hochstetler family was to live on the Graber farm; that they had a boy and girl to do a lot of work, including milking cows. The Hochstetlers moved away in July, 1947, to a farm of their own about seven miles distant. The witness did not have any discussion or conversation with the plaintiff about moving away, but prior to the time of moving, the family helped with chores on the farm. The trial court sustained several objections to questions pertaining to this line of testimony. But the court's rulings in this respect were not erroneous, as the questions are either leading, calling for conclusions, or pertain to irrelevant matters. Reviewing the entire record, we reach the conclusion that the

trial court committed no prejudicial error against the defendants in rulings on the admission or exclusion of evidence.

The defendants seek a new trial upon the ground of newly discovered evidence. That evidence is the testimony of Joseph Graber, a son of Levi, and brother of Abraham and Owen Graber. Joseph states in an affidavit that early in the month of October, 1947, he had conversations with Milo Hochstetler, in each of which the plaintiff told the affiant he had made a settlement with the defendants on the basis of wages and that he had accepted $2500.00 in full settlement. Neither of the defendants makes an affidavit with respect to the discovery of this purported evidence, the only affidavit being that of defendants' attorney, who, after stating that the evidence of Joseph Graber is material and that he did not know of the existence of the witness or the evidence at the time of trial, "further deposes and says that he has *discovered* this with the defendants Levi Graber, Abraham Graber and Owen Graber and that none of them knew anything about what Joseph Graber would have testified to and never knew that any such conversation had taken place between him and the said Milo Hochstetler, the plaintiff herein."

The question of whether or not a showing of diligence is sufficient must be considered in the light of all circumstances and occurrences of the trial. This, like other questions pertaining to the granting of a new trial upon the ground of newly discovered evidence, is primarily addressed to the judicial discretion of the trial court. Blum v. Standard Oil Co., 68 ND 329, 279 NW 764; McGregor v. Great Northern Ry. Co. 31 ND 471, 154 NW 261.

Section 28–1902 sets forth the grounds upon which a new trial may be granted and includes

"Newly discovered evidence material to the party making the application, which he could not with reasonable diligence have discovered and produced at the trial."

The record is absolutely devoid of a showing of diligence. On the other hand, the plaintiff filed an affidavit in which he stated that Joseph Graber visited the Levi Graber home on many occasions between April, 1947, and November, 1948, and that Joseph Graber was in attendance at the trial as a spectator

and that the plaintiff talked with him during recesses of the trial and he was present at the time the verdict was rendered. This record discloses no abuse of discretion on the part of the trial court in denying a new trial upon the ground of newly discovered evidence. The judgment and order appealed from are affirmed.

BURKE, CHRISTIANSON and GRIMSON, JJ., concur.

SATHRE, J., did not participate.